D. M. OSBORNE & CO. v. R. W. SCHOONMAKER.

1. CONSTRUCTION OF DEED—*Agreement to Reconvey.* S. and wife executed an instrument in the form of a warranty deed, for the conveyance of land to B., C., and B. At the time B., C. and B. entered into an agreement with S. and wife to reconvey the land described in said deed to S. and wife at the end of a year, upon the payment by S. and wife of a sum of money therein named to B., C., and B., with a stipulation that S. and wife are to occupy the land in the meantime as tenants of B., C. and B. under the deed. S. and wife did not pay, but surrendered the premises to B., C., and B. *Held,* That in view of the treatment accorded said instruments by the parties, they constituted a deed from S. and wife to B., C., and B., and a contract to reconvey from B., C. and B. to S. and wife, upon the payment of the sum of money named in said contract by S. and wife to B., C., and B.

2. EVIDENCE, *Sustains Finding.* The record in this case examined, and *held,* that it discloses evidence to sustain the finding of the district court, and therefore this court will not reverse the action of said court.

*Error from Crawford District Court.*

PROCEEDING by *D. M. Osborne & Co.* against *Schoonmaker,* to enforce an execution sale of land. From an order, at the January term, 1889, setting aside the sale, the plaintiffs bring error.

*Wells & Wells,* for plaintiffs in error.

*James Brown,* for defendant in error.

Opinion by STRANG, C.: In 1873, R. W. Schoonmaker purchased the southeast quarter of section 11, township 29, range 23, Crawford county Kansas, and, with his family, resided thereon until March, 1884. He then moved off the premises, and was away during the years 1884 and 1885. He went back to the premises in March, 1886, but left again in May following, moving upon and cultivating another farm in the neighborhood owned by one Reed during the year 1886. In the spring of 1887, he returned to the farm with his family, as the tenants of Brown and Bell, he and his son paying Brown and Bell the sum of $200 rent for the place that year. The

1st of February of the following year, 1888, he and the family again left the farm, surrendering possession to Brown and Bell. The farm was occupied by M. P. and R. G. Crawford, who farmed it during the year 1884, and by one Jenkins, who cultivated it during the years 1885 and 1886, and who was on the farm occupying and cultivating it during the time Schoonmaker and wife were on the farm in the spring of 1886. April 5, 1886, while on the farm, Schoonmaker and wife executed a deed, in form an absolute warranty deed, for the premises to Brown, Crawford, and Bell. At the time of the execution of this deed, and as a part of the same transaction, a written agreement was entered into between Brown, Crawford and Bell of the first part, and R. W. Schoonmaker and Ann Schoonmaker of the second part, reciting the making of the deed by Schoonmaker and wife to said Brown, Crawford, and Bell, and providing for a reconveyance of said land by Brown, Crawford and Bell to Schoonmaker and wife, in a year from such time, upon the payment by said Schoonmaker and wife to Brown, Crawford and Bell of a certain amount of money owing by said Schoonmaker and wife to said Brown, Crawford, and Bell. Said agreement also contained the following provisions:

"It is fully understood and agreed by said first parties, that if they fail to pay the said several sums of money to said second parties on or before the time stated above, to wit, April 1, 1887, then said second parties are entirely released from any and all obligations to convey said premises to said first parties, and time is the essence of this contract. And if said first parties make any default in any of the conditions of this agreement, then they will surrender the possession of said premises quietly and peaceably to said second parties, or their heirs or assigns. It is further understood and agreed, that until the 1st day of April, A. D. 1887, or until the payment of the several sums as stated, the said parties of the first part occupy said premises as the tenants of said second parties, and disclaim any other or further, or different title or interest therein."

Schoonmaker and wife did not redeem, but surrendered to Brown, Crawford and Bell the possession of the premises

February 1, 1888. April 5, 1887, Crawford and wife deeded their interest in said land to Brown and Bell, who, on the 12th day of March, 1888, sold and conveyed said land to John N. Getter. July 22, 1879, D. M. Osborne & Co. recovered a judgment against R. W. Schoonmaker, before a justice of the peace of Crawford county, for the sum of $267.60. June 29, 1884, an execution was issued on said judgment, and returned "No property found." July 10, 1884, an abstract of said judgment was filed in the office of the clerk of the district court of Crawford county, and now remains on the records of said court unsatisfied. May 28, 1888, an execution was issued on said judgment by the clerk of the district court, directed to the sheriff of said county, who, for want of goods and chattels of the defendant therein, levied the same upon a portion of the land above described, which was appraised at $500, and sold to D. M. Osborne & Co. for $334. Afterward a motion to confirm the sale was filed, and also a motion by John N. Getter to set aside the sale. Over the objection of D. M. Osborne & Co., evidence was heard upon said last motion, and the court finally overruled the motion to confirm, and sustained the motion to set aside the sale, to which ruling D. M. Osborne & Co. excepted, and come here with their case-made and ask this court to reverse the ruling of the court below.

There are several questions raised in this case and discussed in the briefs of counsel, but we think the real question in the case is, whether or not the judgment of D. M. Osborne & Co. was a lien upon the southeast quarter of section 11, township 29 south, of range 23 east, in Crawford county, Kansas, when execution was issued upon said judgment and a part of said land was levied upon and sold in satisfaction thereof. Said land having formerly been the homestead of R. W. Schoonmaker and wife, and occupied as such for many years, the question as to whether or not said judgment was a lien upon said land involves, first, the character of the absence of Schoonmaker and wife from said land during the years 1884 and 1885 and a portion of the year 1886; and, second, the character of the instrument, in form a deed, executed and delivered by said

Schoonmaker and wife to Brown, Crawford and Bell April 5, 1886. We will consider the latter question first. It may be true that, as between Schoonmaker and wife and Brown, Crawford, and Bell, the former might have treated said deed and the contract accompanying it as an equitable mortgage, and thereunder paid the sum named in the said contract to Brown, Crawford, and Bell, and retained the land; but as the instrument made by them was in form a deed, and placed on record by Brown, Crawford, and Bell, and as, by the terms of the contract between them, Schoonmaker and wife were to surrender the possession of the premises to them upon failure to pay the sum named in said contract, and as Schoonmaker and wife did not pay said sum, but treated the instrument as a deed, and surrendered the possession of the premises thereunder to Brown, Crawford, and Bell, we think the instrument must be held to have been a deed, with a contract to reconvey upon payment of the sum therein named by Schoonmaker to Brown, Crawford, and Bell. If such instrument was a deed, then the judgment of D. M. Osborne & Co., to have become a lien upon said land, must have become a lien before the making and delivering of said deed, April 5, 1886. This involves the character of the absence of Schoonmaker and wife from said land prior to the making of the deed thereto to Brown, Crawford, and Bell.

A person may be absent from his homestead without abandoning it as such, and without losing his homestead right therein. It depends upon the character of his absence as to whether or not he loses his homestead right thereby. If a person leaves his homestead to acquire a residence elsewhere, he loses his homestead right by such absence. If, though absent from a homestead, a person still regards it as home, and intends to return thereto, he does not lose his homestead right therein. Did the Schoonmakers intend to abandon their homestead when they left it in 1884, or afterward, prior to their return in the spring of 1886, and the making of the deed to Brown, Crawford, and Bell? If they did, then the moment they left said homestead without intending to return,

or, being absent therefrom, formed an intention to remain away from said homestead, they lost their homestead right, and the judgment of D. M. Osborne & Co., being of record in the office of the clerk of the district court, would become a lien. Schoonmaker and wife both testify that, at the time of leaving their said homestead, it was their fixed and avowed intention to return thereto, and that during all the time of their absence therefrom they fully intended to return to their homestead, and that they did return thereto about the 1st of March, 1886, and were residing thereon and claiming said land as their homestead on the 5th day of April, 1886, the date of their deed to Brown, Crawford, and Bell. Several witnesses testified that they were acquainted with the Schoonmakers during their absence from their farm, and that they frequently heard them speak of the farm as their home, and of their intention to return thereto and reside thereon. Against this evidence rests the fact of the absence of said Schoonmakers from said premises during the years 1884, 1885, and part of the year 1886. We do not think the fact of such absence could overcome the evidence of the parties themselves, that they intended all the time to return to said land and occupy it as a homestead. But upon this question the court before which the proceedings were had found against the plaintiff in error, and, as the question was a disputed one, and the record contains evidence to sustain the finding of said court, this court cannot interfere.

It is therefore recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.