Sarah A. Quigley et al., Appellees, v. H. C. McEvony, Sheriff, et al., Appellants.

41  73
42  844

41  73
48  416

41  73
53  621

41  73
56  424

41  73
59  624

41  73
62  230

Filed June 6, 1894. No. 5489.

1. **Homestead:** Motion to Discharge Attachment. The homestead character of real estate upon which attachment process had been levied is not a proper question to be heard and determined upon a motion to discharge the attachment, and should not be included in the motion as one of the grounds for such discharge, and should not be entertained by the court or judge if so included.

2. **Res Adjudicata:** Ruling on Motion to Discharge Attachment: Homestead Right. The defendant in attachment suit set up in a motion to dissolve an attachment, as one of the grounds for such motion, a claim of exemption of the attached property (real estate) as a homestead. The court made a general finding against the motion and overruled it. *Held*, That it will be presumed that the court deciding the motion only considered and determined such questions as could properly be included in the motion, and such decision will not be given the force of a former adjudication in a proceeding by the debtors afterwards, to select the property as their homestead, by following the statutory provision for making such selection, by giving notice to the officer who levied the writ upon the premises, nor will it be a bar to such selection proceedings.

3. **Homestead Right:** Procedure to Enforce. The parties claiming the premises which were sought to be subjected to the payment of the debt by attachment, as a homestead, were husband and wife, and the property belonged to the wife, or the interest of the defendants (a life estate) therein was vested in her, and the debt upon which the attachment was issued was her individual debt. She having ascertained the fact of the levy of the attachment, the husband being at the time in another state, signed a notice and had it served upon the sheriff before the sale. *Held*, That under the facts in the case this was a sufficient compliance with the requirements of our statutory provisions in regard to selection of homestead from real estate upon which a writ had been levied.

4. **Homestead:** Appraisal. Where the debtor takes the necessary initiative steps after the writ is levied upon his or her prop-

erty, and makes a selection from the property, within the limit as to quantity allowed by the statute, any excess the property selected may have in value above the limit allowed by the law regarding the value does not make any other proceedings necessary on the part of the debtor. It then becomes the duty of the creditor to make application, as provided by law, for appraisal of the premises, and no valid sale of the premises levied upon can be made by the sheriff until the creditor has procured the appraisal to be made as provided by statute.

5. ———: ABANDONMENT. Two things must concur to show an abandonment of a homestead, viz., an intent to abandon, and actual abandonment. (*Eckman v. Scott*, 34 Neb., 817.)

6. Review: FINDINGS OF FACT. This court will not disturb a finding of fact, unless it is clearly wrong, or clearly against the weight of the evidence upon which it is based; and this is the rule in cases tried by the court and in equity cases.

7. Sufficiency of Evidence to Support Decree. The evidence *held* sufficient to support the finding and decree of the court.

APPEAL from the district court of Holt county. Heard below before BARTOW, J.

See opinion for statement of the case.

*H. M. Uttley*, for appellants:

The testimony shows that appellees were not, at the time of levying the attachment, actually residing upon the property claimed to be a homestead, and had not been so residing thereon for more than four months previous to that time. Actual occupancy is necessary in order to make the homestead exemption available to a claimant. The appellees cannot make the property the homestead after the levy of the attachment thereon so as to defeat the lien created thereby. (*Kelly v. Dill*, 23 Minn., 438; *Larimer v. Kelley*, 10 Kan., 299; *Galligher v. Smiley*, 28 Neb., 194; *Jackson v. Creighton*, 29 Neb., 319; *Rector v. Rotton*, 3 Neb., 171; *Brandon v. Moore*, 7 S. W. Rep. [Ark.], 36; *Baker v. Leggett*, 4 S. E. Rep. [N. Car.], 37; *Finley v.*

*Saunders*, 4 S. E. Rep. [N. Car.], 516; *Morgan v. Nunes*, 54 Miss., 308; *Hanson v. Graham*, 23 Pac. Rep. [Cal.], 56; *Keller v. Carr*, 42 N. W. Rep. [Minn.], 292; *Dennis v. Gayle*, 4 So. Rep. [La.], 6; *Colbert v. Henley*, 1 So. Rep. [Miss.], 631; *Fitzgerald v. Fernandez*, 12 Pac. Rep. [Cal.], 562; *Nance v. Hill*, 1 S. E. Rep. [S. Car.], 897; *King v. Goetz*, 11 Pac. Rep. [Cal.], 656; *Myrick v. Bill*, 37 N. W. Rep. [Dak.], 369; *Binzel v. Grogon*, 29 N. W. Rep. [Wis.], 895.)

The husband, being the head of the family, has the right to determine and control their residence; and, when he intentionally removes from and abandons the homestead, and his family accompanies him, neither he nor they have any power to resume it, so as to cut off intervening liens which have attached during such abandonment. (*Titman v. Moore*, 43 Ill., 169; *Galligher v. Smiley*, 28 Neb., 194; *Spaulding v. Crane*, 46 Vt., 292; *Garrett v. Jones*, 10 So. Rep. [Ala.], 702 ; *Philleo v. Smalley*, 23 Tex., 498.)

On the question of *res adjudicata*, see *Brigham v. McDowell*, 19 Neb., 413; *Nelson v. Bevins*, 19 Neb., 716; *Helphrey v. Redick*, 21 Neb., 83.

*E. H. Benedict, contra:*

The fact of removal, coupled with an intention never to return to the homestead, constitutes an abandonment, and nothing else does. (*Cline v. Upton*, 56 Tex., 319; *Fyffe v. Beers*, 18 Ia., 4; *Dunton v. Woodbury*, 24 Ia., 76; *Lindsay v. Murphy*, 76 Va., 428.)

Leaving or renting a homestead, after the claimant has by his occupancy impressed upon it the character of a homestead, is not evidence of abandonment. (*Guy v. Downs*, 12 Neb., 532; Thompson, Homestead & Exemptions, sec. 273; *Tumlinson v. Swinney*, 22 Ark., 400; *Dunn v. Tozer*, 10 Cal., 167; *Stewart v. Brand*, 23 Ia., 477; *Campbell v. Adair*, 45 Miss., 170; *Wetz v. Beard*, 12 O. St., 431; *Herrick v. Graves*, 16 Wis., 157*; *Myers v. Ford*, 22

Wis., 139; *McDermot v. Kernan*, 7 Am. St. Rep. [Wis.], 864.)

The homestead once established is presumed to continue, and the burden is upon the general creditor, who seeks to appropriate it to the satisfaction of his claim, to show by a preponderance of clear and decisive proof that it has been abandoned by the claimant. (*Boot v. Brewster*, 75 Ia., 631; *McMillan v. Warner*, 38 Tex., 414; *Riggs v. Sterling*, 1 Am. St. Rep. [Mich.], 554.)

The owner of a life estate is the owner of the property, and may use the same so as to make it exempt as a homestead. (Thompson, Homestead, sec. 220; *Kendall v. Powers*, 96 Mo., 142; *Pryor v. Stone*, 70 Am. Dec. [Tex.], 344; *Spencer v. Geissman*, 37 Cal., 96.)

The notice served on the sheriff was sufficient. (*McPhee v. O'Rourk*, 10 Col., 301.)

The homestead question was not adjudicated. (*Gayer v. Parker*, 24 Neb., 643; *Uppfalt v. Woermann*, 30 Neb., 189.)

HARRISON, J.

On the 24th day of February, 1890, the appellees filed a petition in the district court of Holt county, alleging that H. C. McEvony, of appellants, was sheriff of Holt county, Nebraska; the Holt County Bank, a corporation doing business at O'Neill, Nebraska; that on or about June 10, 1890, the bank commenced an action against Sarah A. Quigley, in the district court of Holt county, and procured an order of attachment to be issued therein, which was delivered to the sheriff, McEvony, who, on the 11th day of June, 1890, levied the writ on lots 6, 7, and 8, in block 26, O'Neill, Nebraska; that subsequently judgment was rendered in the action, in favor of the bank, in the sum of $950, and on the —— day of ——, A. D. 1890, an order of sale was issued and delivered to the sheriff to sell the above described premises for the satisfaction of the judgment; that the petitioners are now, and have been, hus-

band and wife since the —— day of ——, A. D. 188–, and that Sarah A. Quigley has been for eight years, and now is, owner of a life estate in said premises worth not to exceed $2,000; that on lots Nos. 7 and 8 was a dwelling house and other buildings, and the same have been used and occupied by her as a home and homestead for eight years last passed, and she and her husband have so occupied them since their marriage; that prior to the date of the levy of the attachment they had removed a part of their household goods therefrom and were temporarily absent, but with the intention of returning thereto, and that they did so return and continued to occupy and use said premises as a home; that Sarah A. Quigley served a notice in writing on the sheriff that she claimed said premises as a homestead; that the sheriff refused and refuses to call appraisers to ascertain the value of the premises or to discharge the levy thereon, and is about to offer the property for sale and thus deprive petitioners of their homestead, and cause them irreparable injury. The prayer of the petition was for a decree declaring lots 7 and 8, block 26, to be the homestead of the petitioners, and enjoining the sheriff from further proceeding with the sale as to these two lots. Appellants filed an answer to the petition, admitting that McEvony was sheriff, and the corporate character of the bank, its place of doing business, the action of the bank, the issuance of the attachment therein, and its levy upon the property, the obtaining of the judgment, the order of sale, and that the sheriff was proceeding under it to make the sale; admitted further the life estate of Sarah A. Quigley in the premises, but denied the allegation of value; admitted that there was and is a dwelling and other buildings on lots 7 and 8, but denied the allegation of their homestead character or use as such, and further denied each and every other allegation of the petition, and for further answer alleged, in substance, that the Quigleys filed a motion in the original action for a dissolution of

the attachment therein, setting forth as one of the grounds for the dissolution and discharge of the attachment their claim of the homestead character of the premises and their exemption as a homestead; that by this motion they submitted the question of whether the premises constituted their homestead to the consideration and decision of the court, and that the court determined such issue against them, and such adjudication was and is a bar to the present suit. To this portion of the answer of appellants which set up new matter the appellees filed a reply, which was in effect a general denial. A trial of the issues to the court resulted in special findings on the points in the case, in favor of appellees, and a decree in accordance with such findings and the prayer of the petition, from which determination of the cause the appellants have duly effected an appeal to this court.

We will first notice the contention of appellants, that the proceeding by motion to dissolve the attachment and the matters therein decided were such as to constitute an adjudication of the homestead rights of the Quigleys in the premises in controversy, and consequently a bar to the bringing of this suit. The motion to dissolve the attachment was made on the grounds that the order of attachment was wrongfully sued out, want of jurisdiction of the court to grant the writ, the untruth or falsity of the allegation of non-residence of Sarah A. Quigley, the defendant in the attachment suit, and that the property levied upon was the homestead of the defendants in the case. The main propositions to be decided at such a hearing are, first, the sufficiency of the affidavit; second, the falsity of the charge in the affidavit filed to obtain the issuance of the writ of attachment. Whatever matters may be in some cases necessarily or properly heard and determined, we do not think it is competent or proper practice, where the writ is levied upon real estate belonging to the debtor, to allow the homestead character of the property to be drawn in question as one of the grounds

for the motion to discharge the attachment.    The hearing
is upon affidavits, more or less skillfully drawn, according
to the ability or lack of the same in this particular branch
of the party who frames them, or his artistic skill, or want
of it, in the affidavit line.    We think it is unquestionable
that the question of whether the premises constitute a home-
stead should be determined in proceedings instituted in the
manner directed by our statutory law, and if there is any
disagreement, then the same can be determined in a proper
action in court, in which issues can be regularly joined and
the matter tried in the manner prescribed for the trial of
issues of law and fact, and that the ends of justice will be bet-
ter subserved by this latter course of proceedings than by
determination of the homestead question in the course of a
hearing on a motion to discharge an attachment.    In *Lang-
don v. Conklin,* 10 O. St., 439, it was held: " It is not
competent for a defendant in attachment to move the court
to discharge the attachment on the ground that the prop-
erty attached does not belong to him, and it is error for a
court or judge at chambers to sustain such motion;" and
we think this rule applicable to the case at bar.    The at-
tachment in the case at bar seems to have been issued on an
affidavit which, as grounds for the same, alleged that the
defendant was a non-resident of the state, and the judge who
passed upon said motion did not make any finding as to
any particular portion or ground of the motion, but made
a general order overruling it.    It is to be presumed that in
doing so he only considered and passed upon such ques-
tions as were properly before him by the motion, and if so,
he did not decide the paragraphs of it in which it was
sought to bring into controversy and decide at the time the
question of the homestead character of lots 7 and 8, block
26, and their exemption.    These facts were not in direct
issue and could not be determined, and any determination
of them in the proceedings by motion to dissolve the attach-
ment was not conclusive, as they could not then be prop

erly in controversy. (*Uppfalt v. Woermann*, 30 Neb., 189; *Gayer v. Parker*, 24 Neb., 643.)

This brings us to the main contentions in the case, which may be briefly stated as follows:

First—That the notice given to the sheriff, that the defendants in the attachment suit claimed the premises to be exempt as a homestead, was not served on the officer at the time of the levy, as required by law, but some thirty days afterwards, and was not served by the husband, but was served by the wife, and hence was ineffective.

Second—That the defendants (appellees) failed to prove that the property was not worth more than $2,000; that it was incumbent upon them to do this, and having failed, their proof was incomplete and not sufficient to support the decree in their favor.

Third—The evidence does not show that they were occupying the premises levied upon, or that it was their home, but on the contrary does show that they had removed to another city and state, and abandoned these premises as a home.

The sections of our statute (see Comp. Stats., 1893, pp. 500, 501) governing the subject of homestead, in so far as a discussion of it will be necessary in this case, are as follows:

"Section 1. A homestead not exceeding in value $2,000, consisting of the dwelling house in which the claimant resides, and its appurtenances, and the land on which the same is situated, not exceeding 160 acres of land, to be selected by the owner thereof, and not in any incorporated city or village, or instead thereof, at the option of the claimant, a quantity of contiguous land not exceeding two lots within any incorporated city or village shall be exempt from judgment liens and from execution or forced sale, except as in this chapter provided.

"Sec. 2. If the claimant be married, the homestead may be selected from the separate property of the husband, or

with the consent of the wife, from her separate property.
* * *

"Sec. 5. When an execution for the enforcement of a judgment obtained in a case not within the classes enumerated in section 3 is levied upon the lands or tenements of a head of a family, such head of a family may notify the officer at the time of making the levy of what he regards as his homestead, with a description thereof, within the limits above prescribed, and the remainder alone shall be subject to such levy, except as otherwise provided in this chapter. The judgment creditor may thereupon apply to the district court in the county in which the homestead is situated, for the appointment of persons to appraise the value thereof.
* * * * * * *

"Sec. 15. The phrase 'head of a family,' as used in this chapter, includes within its meaning: First—The husband, when the claimant is a married person." * * *

It is first claimed that inasmuch as the statute requires the notice to be given at the time of the levy, and that its service in this case was thirty days subsequent to the time of the levy, it had no effect; and further, that the law requires it to be served by the "head of the family," and that the head of the family in this case was the husband, and the notice served in this case was signed by the wife, it was not such a notice as could bind the sheriff or the creditor, or affect the attachment, or call for any such action on the part of the creditors, as is contemplated by section 5 above quoted; and the further argument is advanced, to which it will probably be better to give attention here than elsewhere, that there is nothing to show that the wife never gave her consent to the selection of the property as a homestead. The evidence shows that the Quigleys went to Sioux City on or about August, 1889; that Sarah A. Quigley, when she returned to O'Neill, about the middle of the month of July of the following year, saw the attachment notice in the papers and thus for the first time became aware of the

levy of the attachment on the property of which she was the owner. The evidence further discloses that she at once wrote to her husband, then in Sioux City, and immediately took the steps prescribed by statute to establish the exemption of what they claimed as their home and homestead, by serving or having served upon the officer the notice required. The fact that she, being the owner of the property, signed the notice, we think disposes of the contention that there is nothing to prove that she ever gave her consent to its selection; shows not only that she was willing it should be so chosen, but that she actively and of her own volition set it apart and characterized it as a homestead. The statutory exemption of a homestead was intended and enacted in the interest of, and for the benefit of, the debtor, and it is the policy of the law that such enactments be liberally construed, so that the intention of the legislature shall be enforced or carried out to its fullest and greatest extent, and especially is this true of homestead and exemption acts. The primary and sole object and purpose of the notice required by the section of our statutes doubtless was and is that the sheriff, and the attachment or execution creditors, should and shall be apprised of the debtor's right or claim of right in the premises, that they may act or proceed accordingly; and we think that the notice in this case, given as it was by the party owning the property, and as soon as it was ascertained that a levy had been made, was sufficient to apprise the sheriff and creditor of the right claimed by the debtor in the property, and was sufficient, both as to the person signing and giving it and as to the time of service, to satisfy and fulfill the requirements of the law in regard to notice. (*McPhee v. O'Rourke*, 3 Am. St. Rep., 579, 10 Col., 301.)

We will next discuss the claim that it devolved upon the appellees to prove the value of the premises which they allege is their homestead, and that having failed so to

do, there is such a lack of proof on their part as precludes the rendering of a decree in their favor. There were three lots levied upon by the sheriff by virtue of the writ of attachment, and the debtor then selected two of them upon which stood the buildings, and notified the sheriff of such selection. Under the provisions of the statute, section 1, above quoted, the debtor was entitled to two lots, and having taken the initiative steps to preserve and protect the homestead right, the debtor had done all that the law required in the first instance. The property selected was within the limit as to quantity allowed by the terms of the statute, and any excess in value did not make any other proceedings necessary on the part of the debtor. It then devolved upon the creditor as a duty to ascertain the value of the premises selected, in the manner pointed out in the law, by making application for an appraisal, and having its value assessed, and until a creditor did so, no valid sale could be made by the sheriff of the lots selected as a homestead. (See *Riggs v. Sterling*, 1 Am. St. Rep., 554, 60 Mich., 643, and cases cited.)

The third contention of the appellants is that the evidence introduced in the case was not of such a character as to warrant the court in finding that the premises constituted the homestead of the appellees at the time the officer levied the writ of attachment upon them; but, on the contrary, the testimony clearly disclosed that the Quigleys had removed to, and were living at the time of the levy in, Sioux City, Iowa, and had abandoned these premises as a home and homestead. The testimony in this case may, we think, fairly be said to establish, that on or about August, 1889, the appellee, being then engaged in the millinery business in O'Neill, and occupying these premises as a home, became dissatisfied with the returns from her business and concluded to remove to Sioux City for the purpose of disposing of the stock of goods, and did go to Sioux City, rented a store room, and engaged in business there;

also rented a house for residence purposes and together with her husband lived therein; that when they removed from O'Neill they did not take with them all their household goods, but left quite a number of articles in the house and buildings on the lots levied upon; that before starting they took counsel as to whether they could leave these premises and go to Sioux City as they did, and go into business there for a time, and not jeopardize their homestead right, and were informed that they could, provided their removal was temporary and with a *bona fide* intention to return. That this evidence in regard to taking counsel was competent and material see *Painter v. Steffen*, 54 N. W. Rep. [Ia.], 229, in which case it was held: "On the question of whether plaintiffs have abandoned their homestead, evidence that before going away plaintiffs took legal advice that such absence would not constitute an abandonment if there was a *bona fide* intention to return is admissible as *res gestæ*." The evidence further shows that they never intended to leave these premises permanently, only temporarily, and that it was at all times their intention to return to it, as they did, as a home. During the time they were away from it the property in O'Neill was rented to some person, and there is evidence in the record that they, or that Sarah A. Quigley, stated during this time that they, or she, would never return to O'Neill to live or to stay. While it is true that the evidence was conflicting on this and some other points, we cannot say that the finding of the court, that the testimony, considered as a whole, supported the claim of appellees to the premises in suit as their homestead, was clearly wrong, or that there was not evidence sufficient to support or warrant such a finding, and, according to a well established rule of this court, cannot disturb it. (*White Lake Lumber Co. v. Stone*, 19 Neb., 402; *Witter v. Hoover*, 24 Neb., 605; *Aultman v. Patterson*, 14 Neb., 58; *McLaughlin v. Sandusky*, 17 Neb., 110.) Each case of this nature, where the

Quigley v. McEvony.

abandonment of a homestead is involved, must be decided or turn upon à conclusion or determination, under the testimony, of whether or not the intention to abandon existed, and that there was an actual abandonment, and it follows necessarily that every individual case must depend upon and be governed by the facts developed in it. In *Eckman v. Scott*, 34 Neb., 817, we find the following statement, which is quite applicable to the case at bar: "It appears that W. T. Scott went to Beatrice in 1888 to obtain employment; that there was no intenti. n to remove from Pawnee City, although, in consequence of the expense of supporting his family in one place and hiring his own board in another, his family moved temporarily to Beatrice, and the wife rented the homestead, and afterwards she returned to Pawnee City and sold and conveyed the same. To constitute an abandonment of a homestead two things must concur, viz., an intention to abandon, and actual abandonment. (*Elder v. Reilly*, 10 N. W. Rep. [Ia.], 804.) In the case at bar the proof fails to show an actual abandonment, and the lien of the judgment did not attach to the same." (See, also, *Painter v. Steffen*, 54 N. W. Rep. [Ia.], 229; *Osborne v. Schoonmaker*, 28 Pac. Rep., 711, 47 Kan., 667; *Robinson v. Swearingin*, 17 S. W. Rep. [Ark.], 365.) In *Edwards v. Reid*, 39 Neb., 645, decided by this court March 6, 1894, it was held: "Removing from a homestead and residing temporarily elsewhere for the purpose of business, pleasure, or health, will not work an abandonment of a homestead, unless coupled with such removal is the intention not to return, or, after removal, the intention is formed of remaining away." The judgment of the district court is

AFFIRMED.