Miguel Truyol, Plaintiff and Appellee, *v.* Francisco Vázquez, Defendant and Appellant.

No. 6265. Argued March 7, 1934.—Decided May 29, 1934.

714

Mr. Justice Córdova Dávila delivered the opinion of the court.

This is an action of debt brought by Miguel Truyol against Francisco Vázquez to recover the sum of $652.18. In order to secure the effectiveness of any judgment that might be rendered, the plaintiff requested that property of the defendant be attached. The court so ordered upon the furnishing of the corresponding bond. The writ of attachment was issued and executed by the marshal, who, on the back of the same, made the following return:

"That I received the present writ of attachment in Civil Case No. 9845, brought in the District Court of Guayama by Miguel Truyol, plaintiff, against Francisco Vázquez, defendant, at 11 o'clock in the morning of June 2, 1932, and pursuant thereto and upon motion made by plaintiff I proceeded to attach and did attach the following described properties as belonging to Francisco Vázquez: URBAN;—one-story house built of American lumber and roofed with galvanized iron, measuring 20 feet in frontage by 22 feet in depth, located at Las Torres Street, place known as San Felipe, ward of Hoyo Inglés of Guayama, Puerto Rico, bounded on the north by Faustino Martínez; on the south by the street on which it is located; on the east by Flora Mariani; and on the west by Eduardo Fornier. —URBAN: house built of American lumber and roofed with galvanized iron consisting of one story, measuring 31 feet 7 inches in depth by 26 feet 3 inches in frontage; it is located at San Felipe, ward of Hoyo Inglés of Guayama, Puerto Rico. It is bounded on the north by Carolina Vallés; on the south by the street upon which it is located; on the east by Eugenio Alvarado and on the west by Santa Rita Street."

The defendant requested the discharge of the attachment levied on one of the two houses owned by him because it was his homestead occupied by him and his family as a residence, alleging that, according to law, said property is exempt from attachment, judgment, or execution.

Acting in accordance with the provisions of section 14 of the Act to secure the effectiveness of judgments, the court issued an order directing that both parties be summoned to appear at the hearing of the matter, and present such evidence as each of the parties might desire.

The plaintiff filed an opposition to the discharge of the attachment, among other grounds, because the District Court of Guayama lacked jurisdiction to determine a homestead claim which is valued at $200. It is well to state that the defendant appraises the property which he considers exempt from execution at $200 while the plaintiff values it at $500.

The lower court considered itself without jurisdiction to decide the question raised, which necessarily involved a decision in respect to the rights of the defendant to his alleged homestead, and denied the motion presented by the defendant. It is from this order that the present appeal has been taken. The appellant maintains that the lower court erred in refusing to set aside the attachment levied, and in holding that it had no jurisdiction to do so because the motion to set aside the attachment dealt with a right or estate of homestead the value of which does not exceed $500.

The defendant argues that where a court acquires jurisdiction, or is vested with it by law, to hear a cause, it likewise has such jurisdiction to hear and decide all matters which are incidental to the main question or are brought up as incidents of the same, even though, in deciding these questions, the court is called upon to consider and decide matters which, if raised or submitted in an original complaint or cause of action, would not be within the sphere of its jurisdiction. The theory of the defendant is that the courts which hear the main action may also hear the acces-

sory or incidental matters. In the opinion of the appellant, where the law exempts from attachment or execution a certain property which has been attached by an order of the court, such an attachment is null and void, and the privilege of exemption should not be requested by means of a complaint but by virtue of a motion alleging the attachment and its nullity, because, in accordance with the law, it cannot be levied on property which is exempt from execution. Such a motion, according to the defendant, must be filed where the action was begun and in the court which ordered the attachment.

In Puerto Rico attachments are decreed and carried out in accordance with the Act to secure the effectiveness of judgments, approved in March, 1902. Section 14 of this act reads as follows:

"All allegations made by either party in the course of the proceedings regarding the remedy, shall be substantiated, notifying the other party by means of a summons to appear before any of the judges, each party having then an opportunity to produce their proofs. The court shall immediately decide the question, but in no case shall the incidental questions interfere with the course of the proceedings in the principal question or suit. Not more than five days shall elapse between the time the summons is served, and the appearance of the parties at the hearing, which shall not be suspended for any reason. Every decision of the court shall immediately be carried into effect, but the injured person may protest and declare his intention to take an appeal, as provided in the law of civil procedure, against the final judgment of the court."

There is no doubt whatever that the district court acted within its jurisdiction in ordering the attachment of the two houses which are owned by the defendant. Nor can there be any doubt that it has jurisdiction to decide whether or not such property is exempt from attachment. The proper proceeding to follow where property which the law exempts from execution is attached, is to request that it be excluded from the order of attachment, upon proof of the nature of the property, and of its value, where it is necessary to ascer-

tain the same. The right of homestead should not be an exception to the general rule, even though the court has to determine the existence of this right in order to hold that the property is exempt from execution. The proceeding is simple and expeditious; it avoids subsequent litigation and offers ample protection to the contending parties, who may conveniently and without difficulty present their evidence and defend their respective rights at the hearing authorized by the section above transcribed.

The lower court tells us in its opinion that this court, in various decisions, and among them those of *Petterson* v. *Contreras,* 42 P.R.R. 474; *Arroyo* v. *District Court of San Juan et al.,* 38 P.R.R. 9; *Ducheny* v. *District Court of San Juan et al.,* 38 P.R.R. 12; *Hedilla* v. *Monagas et al.,* 38 P.R.R. 24, has held that the municipal courts, and not the district courts, have jurisdiction in an action in which a homestead right is claimed, and adds, citing the case of *Cueto* v. *District Court of San Juan et al.,* 37 P.R.R. 227, that the allegation of homestead requires an answer, a trial, and a judgment deciding the question raised.

In *Cueto* v. *District Court, supra,* the defendants in a mortgage foreclosure proceeding filed an answer to the complaint and a cross-complaint alleging that the mortgaged property was affected by their estate of homestead and praying that the complaint be dismissed. It was held that, according to the Mortgage Law and its Regulations, the defendants had no right to file an answer or a cross-complaint in the foreclosure proceeding, because these pleadings were not related to any of the matters authorized under this proceeding and it could not be determined therein whether there was an estate of homestead in the mortgaged property vested in the defendants nor whether the execution creditor was bound to respect it.

It was then that the court said that the pleading of the defendants required "an answer, a trial, and a judgment to determine the question raised by them, that is, an ordinary

action within a special and summary proceeding, which is at variance with the nature of the mortgage foreclosure proceeding and in opposition to the provisions of said section 175." The decision in that case was by a majority. The opinion of the court was written by Justice Aldrey. Justice Wolf wrote a concurring opinion. Justice Hutchison wrote a dissenting opinion in which Chief Justice Del Toro concurred, and from which we copy the following:

"The order of the court below, therefore, did not interrupt, stay or suspend any part of the summary proceeding prescribed by the Mortgage Law and its Regulations. But even in the 'declarative action' to which a defendant is relegated by article 175 of the Regulations he would be entitled to have the proceeds of sale retained in the custody of the court pending a determination of his rights in such separate suit. In the circumstances, we are somewhat at a loss to understand why the claim to a homestead, affecting only the question of sale or the disposition or distribution of the proceeds, may not be asserted either by motion or by cross-complaint and determined in the foreclosure proceeding as well as in an independent action. Not only would this practice tend to avoid a multiplicity of suits but, if the issue so raised is promptly disposed of, would enable prospective purchasers to ascertain what part, if any, of the mortgaged premises had been excluded instead of chilling the bidding by some vague notice of an outstanding claim pending determination in an independent action."

Judging from the opinion written by Justice Aldrey, what was really decided in the case mentioned above was that an allegation of homestead cannot be made in a mortgage foreclosure proceeding, in view of the special and summary character of such proceeding and of the provisions of the Law and article 175 of its Regulations; but nothing was said in regard to whether or not this allegation may be made in an ordinary suit before a district court when property alleged by the defendant to constitute his homestead is attached.

The plaintiff-appellee argues that section 249 of our Code of Civil Procedure, which in addition to exempting the home-

stead, exempts other specified property from execution, is identical with section 4480 of the Code of Civil Procedure of Idaho, and cites the case of *Mason* v. *Lieuallen,* 4 Idaho 415, 39 Pac. 1017, in which the discharge of an attachment on property considered exempt from execution was sought. According to the law in force in Idaho, the only ground for the discharge of an attachment is that the order has been improperly or unlawfully issued. The Supreme Court of said State, citing an opinion of the Supreme Court of Nebraska, expressed itself as follows:

". . . In the case of *Quigley* v. *McEvony,* 41 Neb. 73, 59 N. W. 767, which is the only case cited where the questions decided are similar to those involved in the case under consideration, the court says: 'We do not think it is competent or proper practice, where the writ is levied upon real estate belonging to the debtor, to allow the homestead character of the property to be drawn in question as one of the grounds for the motion to discharge the attachment. The hearing is upon affidavits more or less skillfully drawn, according to the ability, or lack of the same, in this particular branch, of the party who frames them, or his artistic skill, or want of it, in the affidavit line. We think it is unquestionable that the question of whether the premises constitute a homestead should be determined in proceedings instituted in the manner directed by our statutory law, and, if there is any disagreement, then the same can be determined in a proper action in court, in which issues can be regularly joined, and the matter tried in the manner prescribed for the trial of issues of law and fact; and that the ends of justice will be better subserved by this latter course of proceedings than by determination of the homestead question in the course of a hearing on a motion to discharge an attachment." With this conclusion we fully concur. The statutes of Nebraska do not, as do those of Idaho, limit the grounds upon which a motion to discharge an attachment may be based, to its irregular and improper issuance."

The arguments utilized by the Supreme Court of Nebraska cannot be strictly applied to the law in force in Puerto Rico. Here the hearing is not upon affidavits which may be more or less skillfully drawn, as that court says, but on the evi-

dence which is presented in court at an oral hearing where the witnesses may be fully questioned by, both parties, under the immediate vigilance of the judge who hears the testimony and who purifies and clarifies it in the crucible of his judicial discernment. Section 14 of the Act to secure the effectiveness of judgments provides, (1) a separate proceeding for the questions raised in regard to securing the effectiveness of the judgment; (2) a notice to the opposing party who may answer; (3) the setting of a hearing; and (4) an oral hearing at which are taken such proofs as each of the parties may present and may be pertinent. Lastly, the judgment which the court renders after the hearing is appealable, in accordance with section 295 of the Code of Civil Procedure. This is an oral hearing at which the question of homestead may be fully discussed and decided by the court which ordered the attachment, without the necessity of submitting the interested party to the inconvenience of bringing an independent action. The principles of justice are in this way perfectly fulfilled. The law expressly provides that the homestead is not subject to execution. To permit the attachment and execution of property of the defendant after he has asserted a homestead claim, on the pretext that the court lacks jurisdiction, would be equivalent to nullifying the provisions of the statute which prescribes that this property is exempt from execution. If the defendant really has constituted his homestead and he is obliged to bring an action to enforce his rights, and his property is attached and executed, it must be admitted that the very thing expressly prohibited by law is being done to property declared exempt from execution.

The question of the right of homestead is not in itself so complicated that it cannot be decided by means of a motion on which all the parties are heard and all of the interests involved in the controversy are protected.

In the case of *Buonomo* v. *Municipal Court*, 39 P.R.R. 796, upon the execution of a judgment rendered by a municipal court, notice was given of the sale at public auction of a parcel owned by the debtor and previously attached in the suit. On the day set for the public sale the said debtor, without notice to the opposing party, filed a motion alleging that he had constituted his homestead on the said parcel. The court, without hearing the plaintiff in the action, ordered the marshal to abstain from executing on the property, in case the highest bid for the parcel should be below $500, as the same was exempt from execution, but if the highest bid should exceed $500, to proceed with the corresponding execution and the consummation of the sale at public auction, delivering the said $500 to the defendant, and to the plaintiff only the excess over the said sum. The order of the municipal court was vacated by the district court in a certiorari proceeding. This court, in affirming on appeal the decision which vacated the order, expressed itself as follows:

"Whatever differences of opinion may exist otherwise among the members of this court, they unanimously agree that in order to enforce homestead rights compliance must be had with the requirements of 'due process of law,' so admirably defined by Webster, in his argument in the Dartmouth College case, as 'a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.'"

The Act to secure the effectiveness of judgments offers all of these guaranties in the oral hearing authorized by its section 14.

In volume 29 of Corpus Juris, page 973, it is said:

"It has been held where a court has acquired jurisdiction of a cause, it may allot homestead where such allotment is a necessary incident to the proper exercise of jurisdiction already acquired on other grounds. But it is also held that, where the court has jurisdiction to set apart the homestead as such necessary incident, it cannot exercise the power to allot homestead unless it has acquired jurisdiction on other grounds."

In the case of *Arnold* v. *Jones*, 77 Tenn. 545, an action was brought to recover a parcel of land. The case was decided in favor of the plaintiff but the court appointed commissioners to lay off the homestead of the defendant and his wife. It was argued that the court, in rendering judgment, was obliged to decide in favor of the plaintiff or of the defendant but that it did not have authority to appoint commissioners to lay off the homestead as it did. The Supreme Court of Tennessee expressed itself as follows:

"We have no statute providing for this precise case. We have one providing for laying off the homestead under the direction of an officer levying an execution or attachment, but that is not this case. The court found by its judgment, and properly in accord' with our decisions, that the homestead did not pass by the deed of the trustee.

"It could not, therefore, award a writ of possession as to it, because it was not recovered. The plaintiff, however, was entitled to the other land, and a writ of possession for the same. It therefore became a necessity for the court, in order to the proper execution of its judgment, to ascertain the homestead, or that it be done in some way under its authority. . . .

"In the action of ejectment the judgment is executed by a writ of possession issued to the sheriff, directing him to put the plaintiff in possession of the premises: Code, sec. 3251. To do this in the present case, before the homestead is laid off, would put the parties to the trouble and expense of another suit to have the homestead laid off, and then a writ of possession to be restored to possession or a writ of restitution on the part of the court dispossessing them wrongfully. It would seem that all this should be avoided, under the principle of the common law, that every court has the inherent power to enforce its own decrees, which must necessarily involve such convenient legal means as will effectuate the end."

The order appealed from must be reversed and the case remanded for further proceedings in accordance with the principles laid down in this opinion.