CLARENCE G. BLISS, RECEIVER, APPELLANT, v. EDWARD F. WHITE ET AL., APPELLEES.

272 N. W. 769

FILED APRIL 23, 1937. No. 29946.

*Allen, Requartte & Wood* and *Lee Card,* for appellant.

*Charles A. Fisher, contra.*

Heard before Goss, C. J., Good, Eberly, Day, Paine and Carter, JJ., and Clements, District Judge.

Clements, District Judge.

This action arises from the levy of an execution upon real estate claimed to be the homestead of debtors and the sale of the real estate upon the execution. Upon motion of the debtor the sale was set aside by the trial court and the case comes here on appeal.

In the trial of this case no evidence was offered by the judgment creditor, appellant herein. The facts in the case must be gathered from the evidence presented by the appellees.

A summary of this evidence shows that Daniel O. Cleghorn and Maude E. Cleghorn are husband and wife. For about 30 years prior to the trial in this case, Mr. Cleghorn had been and then was a railroad conductor running out of Chadron, Nebraska, on the Northwestern railroad.

At the time the controversy in this case arose, Mr. Cleghorn owned three pieces of real estate in Chadron—a house and lot on Shelton street, a house on Main street and a house on King street. The properties on Shelton and King streets are under foreclosure. It does not appear that the Main street property is mortgaged, but it is under lease by the terms of which the rental is applied upon a note owed by Mr. Cleghorn.

In 1928 Mrs. Cleghorn acquired a small tract of land about ten miles south of the city of Chadron and built some buildings thereon. It appears that Mr. Cleghorn furnished the money for this enterprise, but the title to the property was taken in the name of his wife and the property has always been considered as belonging to her. The buildings constructed on this tract consisted of a main building and garage used by Mrs. Cleghorn as a residence during the summer months, and a number of smaller buildings used for rental purposes. Ever since she acquired the property and built the buildings Mrs. Cleghorn has operated it as a summer camp for tourists and others.

Owing to the fact that Mr. Cleghorn's business required

him to be on the road a large part of the time and to Mrs. Cleghorn's business enterprise, the residence of these people at times has been very uncertain. Mr. Cleghorn kept a room in the Shelton street house which he occupied as a sleeping apartment when he was not out at the summer camp. The Shelton street property is an apartment house consisting of four apartments and two rooms. At the time the summer camp property was acquired the Cleghorn's were occupying one apartment in the house. The other apartments were rented. After the building of the residence at the summer camp the Cleghorns gave up their apartment in the Shelton street house, reserving the one room where Mr. Cleghorn slept. The reason for reserving this room seems to have been the necessity of Mr. Cleghorn having a place in Chadron where he could be called for duty. In the winter months the Cleghorns reserved two rooms and the basement in the Shelton street property where they lived during the cold months. In the summer Mrs. Cleghorn lived at the summer camp and Mr. Cleghorn was there with her as much of the time as he was able from his duties as a conductor.

Up to the time that this litigation arose the parties never seemed to have made any formal selection of a homestead.

Some time subsequent to the time Mrs. Cleghorn acquired the summer camp, she became indebted by reason of certain notes she signed as surety, and on the 18th day of March, 1931, a judgment in the sum of $2,850.76 was rendered against her in the district court for Dawes county on these notes. On February 27, 1936, an execution was issued on this judgment, levied upon the summer camp property, and this property was advertised for sale to satisfy this judgment.

On March 30, 1936, Maude E. Cleghorn and Daniel O. Cleghorn caused a notice to be served upon the sheriff holding the execution that they claimed a homestead in this property, that it does not exceed in value the sum of $2,000 and is exempt from forced sale. The sheriff took no action on this notice but sold the property to the judgment creditor

for the sum of $900. On April 4, 1936, Maude E. Cleghorn filed a motion in the district court for Dawes county, as follows:

"Comes now the defendant Maude E. Cleghorn, and moves the court to set aside and vacate the sheriff's sale under execution held on March 31, 1936, for each of the following reasons, to-wit:

"1. That the property levied on and sold by the sheriff under the execution, in this action, was exempt to the defendant Cleghorn as a homestead.

"2. That, after the levy of the execution and before the sale, said defendant and her husband had served on the sheriff and Lee Card, attorney for plaintiff, a written notice claiming the real estate levied upon as a homestead, and that the same was, therefore, exempt from sale on execution, and that the judgment creditor failed to have claimants' homestead right determined, as provided by sections 40-105 and 40-106, Compiled Statutes of Nebraska, 1929."

A copy of said notice was attached to the motion.

It is from the court's ruling on this motion setting aside the sale that the appellant appeals and brings this case here.

The appellant contends, first, that the execution was issued upon an indebtedness of the wife, was levied upon her separate property, that she was not the head of the family, and that a notice signed by her did not require the sheriff to take the statutory steps to determine the homestead, and that the parties could not select a homestead from her property; second, that the evidence shows that the property in question was not the homestead of the claimants; that they had a homestead elsewhere in property belonging to the head of the family.

The first contention of appellant is answered by our holding in *Quigley v. McEvony,* 41 Neb. 73, 59 N. W. 767. In this case writ of attachment was levied upon the separate property of Sarah A. Quigley and for her individual debt. She was a married woman residing at the time with her husband in Sioux City, Iowa. The property levied upon

was a residence in O'Neill, Nebraska. Mrs. Quigley caused a notice to be served on the sheriff that she claimed the property as a homestead. The sheriff disregarded the notice, judgment was rendered in the attachment proceedings and an order to sell the premises issued. Mrs. Quigley brought an action to enjoin the sale and have the property declared to be a homestead. The attaching creditor made the same contentions which are advanced here, namely,. Mrs. Quigley was not the head of a family; a notice signed by her did not require the sheriff to determine the homestead; the evidence did. not support the court's judgment that she was entitled to a homestead in the O'Neill property. In this case we held that the notice signed by the wife, the owner of the property, was sufficient, using this language:

"A statutory exemption of a homestead was intended and enacted in the interest of, and for the benefit of, the debtor, and it is the policy of the law that such enactments be liberally construed, so that the intention of the legislature shall be enforced or carried out to its fullest and greatest extent. * * * The primary and sole object and purpose of the notice required by the section of our statutes doubtless was and is that the sheriff, and the attachment or execution creditors, should and shall be apprised of the debtor's right or claim of right in the premises, that they may act or proceed accordingly; and we think that the notice in this case, given as it was by the party owning the property, and as soon as it was ascertained that a levy had been made, was sufficient to apprise the sheriff and creditor of the right claimed by the debtor in the property, and was sufficient, both as to the person signing and giving it and as to the time of service, to satisfy and fulfil the requirements of the law in regard to the notice."

It is apparent that unless we desire to disavow the holding in the *Quigley* case, which we do not, we must find that in the instant case the notice served by the parties in this case was sufficient, and that it became the duty of the sheriff to take the steps provided by statute for the ascer-

tainment of the homestead. He having failed to do this, the sale upon the execution was void and the decision of the trial court setting it aside is right.

We cannot agree with the contentions of the appellant that the evidence shows that the Cleghorns had selected the Shelton street property as their homestead and therefore should not be awarded a homestead in the residence in the summer camp. The evidence discloses that for a number of years prior to the time this controversy arose these parties have vibrated between several places of abode. Prior to the acquisition of the Shelton street apartment house, they lived in a rented house in Chadron, then in an apartment in the Shelton street property, then at Rapid City, South Dakota, then in the summer camp, giving up the apartment in the Shelton street house, reserving only one room for the convenience of Mr. Cleghorn, then back for the winter to two rooms and a basement in the apartment house. We do not think this shows a state of facts sufficiently strong to overcome their positive statement that they had not selected the Shelton street house as their homestead or to require us to hold that there is not sufficient evidence to support their claim to a homestead in the residence in the summer camp.

The ruling of the trial court should be affirmed.

AFFIRMED.