**In the Matter of Jerome
ROSEN, Debtor.**

No. BK02–82963.

United States Bankruptcy Court.
D. Nebraska.

Nov. 2, 2004.

————

Donald P. Dworak, William L. Biggs, Jr., Gross & Welch, Omaha, NE, Michael J. Leahy, Stinson, Morrison, Hecker, LLP, Nicholas Thomas Dafney, Abrahams, Kaslow & Cassman, LLP, Omaha, NE, for Debtor.

Andrew C. McElmeel, Michael J. Leahy, Stinson, Morrison, Hecker, LLP, Omaha, NE, Mark S. Carder, Kansas City, MO, for U.S. Bank National Association.

Trenten P. Bausch, Blackwell, Sanders, Peper, Martin, LLP, Omaha, NE, for Truckers Bank Plan.

Charles E. Benish, Koley Jessen, PC, Omaha, NE, for Citicorp Leasing, Inc.

Robert J. Becker, Stalnaker, Becker & Buresh, Omaha, NE, for Thomas D. Stalnaker, trustee.

Patricia Dugan, U.S. Trustee's Office, Omaha, NE, U.S. Trustee.

### MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Trial was held on July 9, 2004, in Omaha, Nebraska, on U.S. Bank's objection to exemptions (Fil. # 49) and motion to alter, amend, and reconsider order overruling objection to IRA exemption (Fil. # 94), and resistance by the debtor (Fil. # 100).

Donald P. Dworak and Aaron Weiner, Jr., appeared for the debtor, and Mark Carder appeared for U.S. Bank National Association. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).

This case began as an involuntary Chapter 7 case initiated by creditor U.S. Bank National Association ("USB"). An order for relief was entered in Chapter 7 and thereafter the debtor converted the matter to Chapter 11. Eventually, it was re-converted to Chapter 7.

On Schedule C, "Property Claimed as Exempt," the debtor listed, among other assets, an individual retirement account ("IRA") at RBC Dain Rauscher in the amount of $581,180.91. The exemption was claimed under Neb.Rev.Stat. § 25–1563.01.[1] By the time of trial the value had increased to approximately $638,000.

USB filed an objection to the exemption (Filing No. 49). The objection of USB was on two grounds: (1) the IRA is not the type of investment vehicle eligible for exemption under the relevant Nebraska statute, and (2) the funds claimed by the debtor in the IRA are not reasonably necessary for the support of debtor and his dependents. At Filing No. 92, the undersigned overruled that portion of the objection which asserted that the IRA is not the type of investment vehicle eligible for exemption under the relevant Nebraska statute. The ruling was based upon a decision in another case, *In re Bashara,* 293 B.R. 216 (Bankr.D.Neb.2003). The *Bashara* opinion analyzed the exempt status of individual retirement accounts under the Nebraska statutes and found that such accounts were generally exempt, subject only to the "necessary for support" provisions of the statutory section. Filing No. 92, the order in this case, directed that the question of the reasonable necessity for support portion of the objection would be set for trial.

USB moved to alter, amend and reconsider the order that overruled its objection. In the motion, USB suggests that the law in this jurisdiction is not settled with regard to IRA exemptions, because, although the Nebraska Supreme Court has suggested in *Novak v. Novak,* 245 Neb. 366, 513 N.W.2d 303 (1994), that individual retirement accounts are generally exempt if in compliance with the provisions of Neb. Rev.Stat. § 25–1563.01, the Court of Appeals for the Eighth Circuit has come to the opposite conclusion when construing analogous language in 11 U.S.C.

---

1. That section states:

§ 25–1563.01. Stock, pension, or similar plan or contract; exempt from certain process; when.

In bankruptcy and in the collection of a money judgment, the following benefits shall be exempt from attachment, garnishment, or other legal or equitable process and from all claims of creditors: To the extent reasonably necessary for the support of the debtor and any dependent of the debtor, an interest held under a stock bonus, pension, profit-sharing, or similar plan or contract payable on account of illness, disability, death, age, or length of service unless:

(1) Within two years prior to bankruptcy or to entry against the individual of a money judgment which thereafter becomes final, such plan or contract was established or was amended to increase contributions by or under the auspices of the individual or of an insider that employed the individual at the time the individual's rights under such plan or contract arose; or

(2) Such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 408A of the Internal Revenue Code.

For purposes of this section, unless the context otherwise requires, insider shall have the meaning provided in 11 U.S.C. [§ ]101.

§ 522(d)(10)(E). *Rousey v. Jacoway (In re Rousey)*, 347 F.3d 689 (8th Cir.2003), *cert. granted*, —— U.S. ——, 124 S.Ct. 2817, 159 L.Ed.2d 246 (2004). In addition, USB asserts that even if IRA accounts are generally exempt, the particular IRA at issue in this case should not be considered exempt because of the debtor's failure to present evidence that the IRA has, since its inception, qualified under Section 408 of the Internal Revenue Code.

■ Nebraska has rejected the federal exemptions provided in 11 U.S.C. § 522(d) in favor of retaining the personal exemptions set out in the Nebraska statutes and constitution. Neb.Rev.Stat. Ann. § 25–15,105 (Michie 2004); *Horace Mann Cos. v. Pinaire*, 248 Neb. 640, 650, 538 N.W.2d 168, 174–75 (1995); *The Abbott Bank— Hemingford v. Armstrong (In re Armstrong)*, 127 B.R. 852, 853 (D.Neb.1989), *aff'd*, 931 F.2d 1233 (8th Cir.1991).

■ Exemption statutes are to be liberally construed in favor of the debtor. *In re Welborne*, 63 B.R. 23, 26 (Bankr.D.Neb. 1986); *Grassman v. Jensen (In re Estate of Grassman)*, 183 Neb. 147, 152, 158 N.W.2d 673, 676 (1968); *Quigley v. McEvony*, 41 Neb. 73, ——, 59 N.W. 767, 769 (1894).

■ Pursuant to Federal Rule of Bankruptcy Procedure 4003(c), the objecting party bears the burden of proving that the exemption is not properly claimed. When the movant produces evidence rebutting the prima facie validity of the exemption, the burden shifts to the debtor to demonstrate his entitlement to the exemption. *See Carter v. Anderson (In re Carter)*, 182 F.3d 1027 n. 3 (9th Cir.1999); *Hodes v. Jenkins (In re Hodes)*, 308 B.R. 61, 66 (10th Cir. BAP 2004); *In re Marra-*

*ma*, 307 B.R. 332, 336 (Bankr.D.Mass. 2004).

I. *Are Individual Retirement Accounts Generally Exempt Under Nebraska Law?*

Shortly after the Nebraska Legislature enacted § 25–1563.01, this court interpreted the statute to allow an IRA to be exempt. *In re Anzalone*, 122 B.R. 730 (Bankr.D.Neb.1990). In that case, the legislative history and the specific language of the statute were construed. It was apparent from the legislative history that the language of the statute, although not specifically identifying an IRA as included in the exemption provisions, was intended to cover IRAs. The general language of the statute did not identify any specific type of plan, but simply tracked most of the language used in § 522(d)(10)(E) of the Bankruptcy Code. However, the Nebraska statute differs from § 522(d)(10)(E) in a significant term. The Nebraska statute specifically provides that a plan similar to pension plans and others that are identified as exempt, but which is "established ... by or under the auspices of the individual" is exempt unless it violates the restrictions contained in subsection (1) or (2) of the section. *See* § 25–1563.01(1). Section 522(d)(10)(E) does not include as exempt a plan set up by an individual.

Judge Minahan[2] also found that an IRA is exempt under the Nebraska statute. *In re Brehm*, Neb. Bkr. 93:454, Case No. BK92–41762 (Bankr.D.Neb. Sept. 17, 1993), published locally by Legal Information Services, Inc. In *Brehm*, the trustee/objector argued that a self-directed account over which the debtor maintains control and from which the debtor may withdraw funds at any time could not be

**2.** The Hon. John C. Minahan, Jr., United States Bankruptcy Judge for the District of

Nebraska from 1987 until his retirement in 2001.

exempt because such an account is not "payable on account of illness, disability, death, age, or length of service" as required by § 25–1563.01. Judge Minahan determined that the maintenance of control over the fund caused the fund to be property of the bankruptcy estate, in contrast to other types of pension or profit-sharing plans containing anti-alienation clauses which kept them out of the bankruptcy estate altogether. He determined that control was not the significant aspect of an IRA making it exempt or not exempt, but similarity to a pension plan was the significant aspect to consider. Determining that the purpose of an IRA is to provide for retirement benefits, and determining that there are penalties for withdrawal related to age restrictions but no such penalties upon death or disability, Judge Minahan found the IRA in question to be exempt.

Since the bankruptcy decisions referred to above, the Nebraska Court of Appeals and the Nebraska Supreme Court have considered the exempt status of an IRA under the Nebraska statute. Each court found the IRA to be exempt. *See Novak v. Novak*, 2 Neb.App. 21, 508 N.W.2d 283 (1993), *aff'd in part and rev'd in part*, 245 Neb. 366, 513 N.W.2d 303 (1994).

After the *Novak* cases were decided, the *Rousey* case from the Eighth Circuit determined that 11 U.S.C. § 522(d)(10)(E) did not provide an exemption for an IRA created by an individual and controlled by that individual, because such IRA is not payable on account of death, disability, age, etc., as required by the statute. The court decided that if a debtor had access to the funds, the IRA was not exempt. That decision is now before the United States Supreme Court for argument this term.

This court was granted another opportunity to review the question in light of *Rousey*. In the *Bashara* case, *supra*, Nebraska law, rather than the Bankruptcy Code, was in issue. Following the earlier decisions of the bankruptcy judges in Nebraska interpreting Nebraska law, and following the decisions of the Nebraska appellate courts in the *Novak* cases, the IRA in *Bashara* was found to be exempt.

■ With all due respect to the circuit court's interpretation of the exemption statute in the Bankruptcy Code, Nebraska law is different, and an IRA under Nebraska law is exempt unless it fails to comply with all of the provisions of the statute.

## II. *Is the Rosen IRA Exempt Under Nebraska Law?*

■ To be exempt, an IRA must not only be similar to a pension but must qualify under one of the provisions of the Internal Revenue Code which deals with such plans. The specific section of the Internal Revenue Code that deals with an IRA is 26 U.S.C. § 408.[3] Although Sec-

---

**3.** That section states, in relevant part:

§ 408. Individual retirement accounts
(a) Individual retirement account.—For purposes of this section, the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements:
    (1) Except in the case of a rollover contribution described in subsection (d)(3),

in section 402(c), 403(a)(4), 403(b)8, and 457(e)(16)[,] no contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year on behalf of any individual in excess of the amount in effect for such taxable year under section 219(b)(1)(A).
    (2) The trustee is a bank (as defined in subsection (n)) or such other person who demonstrates to the satisfaction of the Secretary that the manner in which such other person will administer the trust will

tion 408(a) identifies an individual retirement account as a trust, Section 408(h) explains that

> a custodial account shall be treated as a trust if the assets of such account are held by a bank ... or another person who demonstrates, to the satisfaction of the Secretary, that the manner in which he will administer the account will be consistent with the requirements of this section, and if the custodial account would, except for the fact that it is not a trust, constitute an individual retirement account described in subsection (a).

■■■ The individual retirement account agreement that is in issue in this case is found at Filing No. 218. An Internal Revenue Service determination letter dated July 22, 1993, is at Filing No. 217. Considering all of the terms of Filing No. 218 and the IRS determination letter at Filing No. 217, it appears that the account itself complies with all of the requirements of the Internal Revenue Code. USB, however, insists that the debtor must prove that the funds accumulating in the account were the result of contributions to the account of no more than $2,000 [4] in any one year, because, according to USB, if any contributions exceeded $2,000 in a particular year, the account itself would be disqualified with regard to the tax benefits under Section 408 and therefore would not comply with the Nebraska statutory provision.

To meet that objection, the debtor presented the testimony of Mr. Rosen stating that he did not ever make deposits to the IRA in an amount in excess of $2,000 per year. He also presented records of the annual reports of the account from the custodian/trustee Dain Rauscher and prior custodians. His records go back only to 1988. Mr. Rosen testified that he originally set up an IRA in the early 1980s, but did not have copies of all of the various agreements and annual statements. Evidence was presented that the Internal Revenue Service did not keep copies of his tax returns for the many years between the early 1980s and 2002. Additionally, his accountant during those years, the person who prepared his income tax returns on a regular basis, was not required to and did not keep early copies of his tax returns. Earlier custodians either did not keep old records or the records were destroyed in the World Trade Center attack on September 11, 2001.

The Internal Revenue Code has, since its amendment to allow individual retirement accounts, limited the amount that could be contributed on an annual basis. The agreement in this case specifically provides for compliance with the Internal Revenue Code. USB has presented no evidence which would even hint at the possibility that the debtor contributed more than the maximum amount in any one year. This issue seems to have arisen

---

be consistent with the requirements of this section.

(3) No part of the trust funds will be invested in life insurance contracts.

(4) The interest of an individual in the balance in his account is nonforfeitable.

(5) The assets of the trust will not be commingled with other property except in a common trust fund or common investment fund.

(6) Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death

benefit requirements of section 401(a) shall apply to the distribution of the entire interest of an individual for whose benefit the trust is maintained.

4. The Internal Revenue Code limits the annual amount of IRA contributions to the amount that is deductible from taxable income. 26 U.S.C. §§ 408(a)(1) and 219(b)(1)(A). During the time period at issue in this case, the maximum deductible contribution was $2,000.

because of the large size of the fund held in the IRA. Without the benefit of remarkable growth through market fluctuations, one could question how deposits of no more than $2,000 per year since 1980 could grow to an account the size of Mr. Rosen's. However, Mr. Rosen's account has been invested, for the most part, through all of these years in the Class A stock of Berkshire Hathaway, Inc. The evidence of the per-share value of that stock for various years prior to 1990 is before the court at Filing No. 172. The range in January of 1980 was a high of $340 per share to a low of $315 per share. In December of 1989 the range was a high of $8,875 per share to a low of $8,250 per share. The records of Mr. Rosen reflect the number of shares held in the IRA and the total value of the account thereafter. The value of the account in 1989, assuming nine or ten shares, is consistent with the share prices in Filing No. 172. In addition, in the deposition testimony of Daniel Pleiss, the expert witness called on behalf of USB, in response to a question from counsel for the debtor concerning whether it would be possible to accumulate the current balances making contributions under the legal limits, Mr. Pleiss stated, "Based on the numbers that I have been given and based on the market value increase in the Berkshire stock, it appears that the present value in his IRA is a reasonable balance based on the growth in that Berkshire stock value." Pleiss Dep. 9:19–22 (Fil.# 205).

I find as a fact, based upon Mr. Rosen's testimony, the records that are currently available concerning his IRA account or accounts, the investment in Berkshire Hathaway, Inc., stock and its growth over the years plus the concurring testimony of Mr. Pleiss, the specific statutory requirement for tax qualification, and the specific language in the IRA document itself, that the funds that have accumulated in the IRA account are the result of deposits within the legally authorized limits and market growth. I therefore find that Mr. Rosen's individual retirement account complies with the tax code and with the Nebraska statutory exemption provision.

### III. *The Amount Reasonably Necessary for the Support of the Debtor*

■ The debtor was, at the time of trial, 65 years old. He is retired and in reasonably good health. His family history concerning the lifespan of his relatives shows that many of them have lived well into their 80s and above. He is a single man, with adult children who are not his legal dependents. For many years he was the president of and then chairman and majority shareholder of Rosen Auto Leasing, Inc., a business which operated in Omaha, Nebraska. That business is now in a Chapter 7 bankruptcy. Mr. Rosen had guaranteed promissory notes to USB, and perhaps others, and the failure of Rosen Auto Leasing, Inc., resulted in Mr. Rosen also being in bankruptcy. During his tenure as president and chairman of Rosen Auto Leasing, Inc., Mr. Rosen enjoyed a comfortable living which enabled him to purchase two residences in Omaha, a residence at Lake Okoboji in Iowa, and a condominium in Phoenix, Arizona. As a result of the bankruptcy, he, or the bankruptcy trustee, has sold most of the real estate. He retains the condominium in Arizona. His current vehicle is a 1989 Mercedes worth approximately $3,000, which he purchased from the Chapter 7 trustee. Other than Social Security benefits, he has no income. He relies upon his ability to draw on funds in the IRA which result from liquidating some of the Berkshire stock. During the pendency of the case, he has been using IRA proceeds for his living expenses and to pay the professionals involved in his case. USB objected

to such use, but I have authorized the use of up to $5,000 per month.

USB and the debtor take diametrically opposed views with regard to how much money Mr. Rosen needs on a monthly basis, and how that amount can be guaranteed until the end of his life.

The parties have stipulated that $1,500 per month is the amount for reasonably necessary expenses for Mr. Rosen's housing, including insurance, water, electricity, maintenance, repair and rent. They have further stipulated that $1,000 is a reasonably necessary expense for moving. Although, as mentioned above, Mr. Rosen currently owns a condominium, the condominium is subject to a mortgage or deed of trust and requires the payment of a monthly homeowners' association fee. The case was tried on the basis that he should be allowed no more than a reasonable amount of rental funds, no matter what his actual current housing expenses amount to.

In addition to ordinary living expenses, Mr. Rosen has expenses related to this litigation, and is a defendant in a complaint objecting to the discharge of his debts. It can also be reasonably anticipated that one or more appeals will result from this litigation and/or the discharge litigation, which will require him to incur additional professional fees.

On behalf of USB, Mr. Pleiss provided testimony concerning what he believed to be a reasonable monthly living expense for Mr. Rosen. A summary of his testimony is contained on the chart at Filing No. 178. He opines that $2,882 per month would be a reasonable amount for Mr. Rosen's monthly expenses. He anticipates that Mr. Rosen will be able to obtain part-time employment which will pay him a net of at least $480 per month. That amount, plus $1,543 per month in Social Security and an annuity distribution of $1,150 per month will provide Mr. Rosen $3,173 in monthly income. According to Mr. Pleiss, if Mr. Rosen works and purchases an annuity, he will have excess income over expenses of $291.

At Filing No. 228, Mr. Pleiss provided a number of quotes for monthly annuities for a 65–year–old male. To receive $1,150 per month from an annuity, Mr. Rosen could liquidate $165,161.26 of his IRA and purchase an annuity. This annuity does not have an inflation factor. If it were to be determined that Mr. Rosen needed more per month, such as $1,500, he could purchase an annuity by using $215,427.73 of the IRA balance. It is the position of USB that Mr. Pleiss's projections regarding income and expenses are reasonable, that they would guarantee monthly income to Mr. Rosen for life, and that the balance of the IRA funds could be distributed to Mr. Rosen's creditors.

Mr. Rosen, through his own testimony and that of his accountant, Reed Samson, has presented two different schedules of income and expenses. They are found at Filing Nos. 230 and 232. After an adjustment for the stipulated rental amount of $1,500, Filing No. 230 would show expenses of approximately $4,700 per month, while No. 232, with the same rental adjustment and deleting a real estate tax number, would leave monthly expenses of approximately $4,200. Both of those numbers exclude an inflation adjustment and exclude the change in his income tax obligation resulting from not having mortgage interest and real estate taxes to deduct.

Mr. Rosen and Mr. Samson feel that a more appropriate method for guaranteeing the monthly revenue stream necessary for Mr. Rosen's support is to assume a four percent interest accumulation per year and a straight-line amortization of the total amount in the IRA over a period of ap-

proximately 27 years. That time frame comports with the Internal Revenue Code life expectancy table used with regard to calculating required minimum withdrawals from the IRA account. Such a calculation would provide to Mr. Rosen $3,236.36 per month, which, when added to his Social Security payment would result in approximately $4,800 per month in revenue.

Turning again to Filing No. 228, which is the collection of quotations for purchasing single-premium annuities, the quotes range from a monthly benefit amount of $1,000, which would require $143,618.49 to be deposited, to $4,442 per month, which would require a deposit of $638,000, an amount that approximates the value of the IRA at the time of trial. The purchase price of a benefit amount of $2,410 per month, with no inflation increase, is $346,120.56. To obtain an annuity that has a built-in inflation factor of two percent per year would add approximately $30,000 to the purchase price.

The monthly benefit amount of $2,400 plus the Social Security of approximately $1,600 would provide Mr. Rosen with a monthly income of about $4,000, which will increase with the Social Security cost-of-living increases. Considering the evidence presented by both parties, I find that the monthly living expenses presented on behalf of Mr. Rosen by Mr. Samson include items that are reasonable and necessary. However, by financing the monthly benefit through an annuity, the annual income tax obligation of Mr. Rosen would be less than the annual income tax obligation calculated by Mr. Samson.

I find that the reasonable amount necessary for the support of Mr. Rosen for the remainder of his life is $4,000 per month. Of that amount, an annuity benefit of $2,410 can be purchased for $346,120, with the balance coming from Social Security. However, in addition to his ordinary monthly expenses, Mr. Rosen has litigation expenses, first with regard to this exemption issue and also with regard to the objection to discharge which is pending. Reasonable attorney fees for such litigation are necessary for his support.

During the pendency of this case, Mr. Rosen has used funds from the IRA for his ordinary living expenses. As of the time of trial, Mr. Rosen had used approximately $125,000. I have allowed him to use funds from the IRA for his living expenses because he had no other source of income. After objection by USB, I limited his withdrawals to $5,000 per month. USB suggests, consistent with its position that the IRA is not exempt in any amount, that the funds he has used during the pendency of the case should somehow be repaid to the IRA to be used for the benefit of creditors. I find that the funds used by Mr. Rosen during the pendency of the case, and up until this opinion is filed, were reasonably necessary for his support and that he has no obligation to repay any of the funds.

In summary, I find that $346,120 of the IRA is necessary to provide Mr. Rosen approximately $2,400 per month, which, when combined with his Social Security benefit, will provide him approximately $4,000 per month. I further find that the funds he has used prior to this date were necessary for his support and he has no obligation to repay the funds. Finally, I find that he has, in addition to his ordinary living expenses, a need for funds in the maximum amount of $60,000 to cover litigation costs that have not been paid from his monthly withdrawals during the pendency of the case. Filing Nos. 200, 201, 202 and 203 itemize actual litigation costs in this case up to date of trial and estimate future litigation costs. The future litigation costs estimated in Filing No. 203 for certification of issues to the Supreme Court of Nebraska and for defending the

discharge objection are unnecessary and unreasonable. There will be no certification to the Nebraska Supreme Court because this opinion resolves the issue of the exemption of an IRA under Nebraska law. I can see very little need to spend the suggested $40,207 to defend the discharge. According to the evidence in this case, Mr. Rosen has only an IRA, which is exempt from judgment, a 1989 Mercedes which is valued at approximately $3,000, and his Social Security income. In other words, Mr. Rosen is judgment-proof and it would not be fair to his creditors to permit him to use funds otherwise available to them to pay attorney fees to save a bankruptcy discharge that he does not need anyway.

In conclusion, the debtor may retain $346,120.56 plus $60,000. He is not required to purchase an annuity and can deal with his monthly expenses in any way that he deems appropriate. However, this amount is all he is allowed to keep to provide for his necessary support. The balance shall be surrendered to the trustee, either as liquidated funds or in kind. Upon liquidation, either by the debtor or by the trustee, sufficient funds may be retained to pay the debtor's tax obligation resulting from such liquidation.

A separate judgment shall be entered.

### JUDGMENT

Trial was held on July 9, 2004, in Omaha, Nebraska, on U.S. Bank's objection to exemptions (Fil.# 49) and motion to alter, amend, and reconsider order overruling objection to IRA exemption (Fil.# 94), and resistance by the debtor (Fil.# 100). Donald P. Dworak and Aaron Weiner, Jr., appeared for the debtor, and Mark Carder appeared for U.S. Bank National Association.

IT IS ORDERED: In accordance with the Memorandum entered today, judgment is hereby entered as follows:

1. Mr. Rosen's individual retirement account is exempt under Nebraska law.

2. The amount necessary for Mr. Rosen's support for the remainder of his life is $346,120.56, plus $60,000 for litigation expenses, for a total of $406,120.56.

3. The balance of the funds in the IRA shall be turned over to the trustee, either in a liquidated amount or in kind by the transfer of the assets contained in the IRA. From such liquidated balance, sufficient funds shall be provided to Mr. Rosen to pay the taxes which accrue as a result of the liquidation.